**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION**

| | | |
|---|---|---|
| RAVEN CAPITAL GROUP, LLC, *Plaintiff* | § § § | |
| | § | SA-21-CV-00059-XR |
| -vs- | § § | |
| CH CRFP 26 LLC, FIDELITY NATIONAL TITLE AGENCY, INC., *Defendants* | § § § § | |

## ORDER

On this day, the Court considered Plaintiff's Petition for Preliminary Injunction (ECF No. 1-3), Defendant's Response (ECF No. 32), the parties' supplemental briefing (ECF Nos. 41, 42), and the arguments made in open court on February 16, 2021. After careful consideration the Court issues the following Order.

## BACKGROUND

This case arises out of an attempt to purchase a residential apartment complex. On September 25, 2020, Plaintiff Raven Capital Group, LLC ("Raven" or the "Buyer"), and Defendant CH CRP 26, LLC (the "Seller") entered into a Purchase and Sale Agreement (the "PSA" or the "Agreement") for Plaintiff's purchase and Defendant's sale of a property located at 9400 Fredricksburg Rd., San Antonio, Texas (the "Property"). ECF No. 1-3. Of particular relevance, the PSA granted Plaintiff the right to elect to purchase the Property by conventional funding or by assuming Defendant's existing loan with Prudential Multifamily Mortgage, LLC ("Prudential" or the "Lender").

On December 10, 2020, Plaintiff learned that Prudential intended to modify certain financial requirements under the existing loan as a condition to approving Raven's assumption of the loan. *Id.* at 8–9, 59. On December 15, 2020, Plaintiff informed Defendant through the broker

1

for the transaction of its decision to close the purchase of the Property using conventional funding rather than through loan assumption. *Id.* at 8–9. The next day, December 16, 2020, Defendant sent Plaintiff a letter asserting that Plaintiff had breached the PSA by "fail[ing] to use commercially reasonable efforts to seek approval from the Lender for the Loan Assumption" and purporting to terminate the contract pursuant to Section 8.1 of the PSA, which grants the Seller the right to terminate the Agreement in the event of the Buyer's Default. *Id*. ¶¶ 42, 44.

Raven asserts that this alleged breach is "nonsensical." *Id.* ¶ 43. Given its explicit right to purchase the Property with conventional funding, Raven argues that it was never required by the terms of the PSA to seek the Lender's approval to assume the existing loan. *Id.* ¶ 43. Still, Plaintiff argues that it did in fact use commercially reasonable efforts to secure Prudential's approval, and that Defendant's assertion to the contrary is pretextual. *Id.* Specifically, Plaintiff alleges that its decision to forgo the loan assumption resulted in Defendant's obligation to pay approximately $4.6 million to Prudential under the existing loan, and that, after learning of Plaintiff's decision, Defendant sought to avoid the resulting monetary liability by terminating the PSA. ECF No. 1-3 ¶¶ 33–36, 40. Plaintiff asserts that it is entitled to close the purchase of the Property via conventional funding. *Id*. ¶ 47.

On December 29, 2020, Plaintiff filed a petition for temporary restraining order in state court in Bexar County, Texas. The following day, the state court issued a temporary restraining order in Plaintiff's favor, prohibiting Defendant from conveying or encumbering the Property pending a hearing on Plaintiff's motion for a temporary injunction. Defendant then removed the case to this Court on January 22, 2021. ECF No. 1. The Court now considers Plaintiff's pending petition for preliminary injunction.

## DISCUSSION

2

### I. Legal Standard

A preliminary injunction is "an extraordinary remedy which should not be granted unless the party seeking it has 'clearly carried the burden of persuasion on all four requirements.'" *Tex. Med. Providers Performing Abortion Servs. v. Lakey*, 667 F.3d 570, 574 (5th Cir. 2012). "To be entitled to a preliminary injunction, the applicants must show (1) a substantial likelihood that they will prevail on the merits; (2) a substantial threat that they will suffer irreparable injury if the injunction is not granted; (3) their substantial injury outweighs the threatened harm to the party to be enjoined; and (4) granting the preliminary injunction will not disserve the public interest." *Voting for Am., Inc. v. Steen*, 732 F.3d 382, 386 (5th Cir. 2013).

### II. Analysis

The Court finds that Plaintiff has failed to demonstrate a substantial likelihood of success on the merits of its claim. "Breach of contract requires pleading and proof that (1) a valid contract exists; (2) the plaintiff performed or tendered performance as contractually required; (3) the defendant breached the contract by failing to perform or tender performance as contractually required; and (4) the plaintiff sustained damages due to the breach." *Pathfinder Oil & Gas, Inc. v. Great W. Drilling, Ltd.*, 574 S.W.3d 882, 890 (Tex. 2019). "A party seeking the equitable remedy of specific performance in lieu of money damages may, in some circumstances, be excused from pleading and proving the second element, but must additionally plead and prove that, at all relevant times, it was ready, willing, and able to perform under the contract." *Id*.

Here, the Court need not decide whether Plaintiff tendered performance as contractually required or proved that it was ready, willing, and able to perform under the contract at all relevant times. Plaintiff cannot succeed under either standard because the contractual deadline to tender performance in the manner chosen by Plaintiff had passed by the time the PSA was terminated.

The PSA provides that Raven could have secured funding for the purchase of the Property through the Loan Assumption or through conventional financing. Section 1.1(h) establishes the closing date, which depends on the source of financing:

> Closing Date: The date that is the later of: (i) sixty-four (64) days after the Date of this Agreement, and (ii), if applicable, ten (10) days after the parties have received written notice from the Lender that Lender's Consent (as defined below) has been granted, the Loan Assumption (as defined below) has been approved and Lender is prepared to close on the Loan Assumption.

ECF No. 32-1 Ex. B. The parties agree that the Closing Date was November 30, 2020.[1]

The Texas Supreme Court has held that a contract's "plain language controls, not what one side or the other alleges they intended to say but did not." *Great Am. Ins. Co. v. Primo*, 512 S.W.3d 890, 893 (Tex. 2017). Here, the Court concludes that the plain language of this provision precludes the Plaintiff's right to close through conventional funding expired on November 30, 2020. As explained below, the Court interprets this provision, within the context of the PSA as a whole, to mean Plaintiff's right to purchase the Property through conventional financing expired on November 30, 2020.

Plaintiff argues in its supplemental briefing that the PSA does not include a "time is of the essence" provision, so it should be permitted to close within a reasonable time after the contractual Closing Date. ECF No. 41 at 6–12. However, Texas courts reject the argument that the lack of such provisions always means that parties may tender performance beyond the contract date. *See Deep Nines, Inc. v. McAfee, Inc.*, 246 S.W.3d 842, 846 (Tex. App.—Dallas 2008, no pet.) ("Although the agreement does not use the phrase 'time is of the essence,' we do not construe contracts or decide cases based on the inclusion or omission of 'magic words.'"); *see also* 2

---

[1] 64 days after the date that the PSA was executed is Saturday, November 28, 2020. Accordingly, the applicable Closing Date is the first business day after that weekend.

MILTON R. FRIEDMAN & JAMES CHARLES SMITH, FRIEDMAN ON CONTRACTS AND CONVEYANCES OF REAL PROPERTY § 7:3.2 (7th ed. 2005) ("In other words, the parties' contract may make time essential without including the magic words 'time is of the essence.'").

Although the mere fact that a contract contemplates a specific closing date does not necessarily imply that time is of the essence, the closing date may be a material term if something in the nature or purpose of the contract makes it apparent that the parties intended time to be of the essence. "A finding that time is of the essence is particularly likely when the provision consists of a right to cancel the contract. Contracts often contain language making one party's performance by a specified date a condition of the other party's duty, and courts will usually honor such language if it is clear." *Capcor at KirbyMain, L.L.C. v. Moody Nat. Kirby Houston S, L.L.C.*, 509 S.W.3d 379, 390 (Tex. App.—Houston [1st Dist.] 2014, no pet.) (internal citations omitted). Such provisions exist here in Section 5.1 and 5.2:

> 5.1. Closing. The consummation of the transactions contemplated hereby . . . shall occur on the Closing Date . . . .
>
> 5.2. Conditions to the Parties' Obligations to Close. The obligation of the Seller, on the one hand, and the Buyer, on the other hand, to consummate the transactions contemplated hereby is contingent upon the following:
> . . .
> > (b) As of the Closing Date, the other party shall have performed its obligations expressly set forth in this Agreement in all material respects, and all deliveries to be made at Closing as expressly set forth in this Agreement have been tendered.
>
> So long as a party is not in default hereunder, if any condition set forth in . . . Paragraph 5.2(b) to such party's obligation to proceed with the Closing hereunder has not been satisfied as of the Closing Date, such party may, in its sole discretion, terminate this Agreement . . . .

ECF No. 32-1 Ex. B.

Courts must "consider the entire writing in an effort to harmonize and give effect to all the provisions of the contract so that none will be rendered meaningless." *Pathfinder Oil & Gas, Inc.*,

5

574 S.W.3d at 889 (internal citation omitted). Here, the Court reads the language of Section 5.2 to permit the parties to close through conventional funding after November 30, 2020 only under specific circumstances absent from this case. Section 5.2 does not automatically terminate the PSA after the expiration of the Closing Date, but grants the parties a right to terminate the PSA—a right that may or may not be exercised, in the "sole discretion" of a non-defaulting party. The provision seems to contemplate the limited possibility of a late closing.

The Closing Date provision establishes the benchmark for interpreting Section 5.2. It tells the parties how to calculate the correct date to close based on the type of financing, but in isolation it does not instruct how the Closing Date functions in this particular agreement. One could imagine, for example, an agreement that used the exact same definition of Closing Date, and later indicated that the agreement automatically terminates after the expiration of the closing date—allowing us to conclude that the closing date is a material provision. One could equally imagine, however, a provision stating that the closing date is not material (or "time is not of the essence"), which would require us to reach the opposite conclusion.

Now imagine that Plaintiff had tendered performance on Nov. 30, and that Defendant was in default when it purported to terminate the PSA on Dec. 15. In that situation, Plaintiff would retain its ability to enforce the PSA, and thus to purchase the Property through conventional financing. Because specific performance is the preferred remedy for contracts involving transfers of real estate, in this hypothetical, the PSA would require the parties to close through conventional financing after Nov. 30. This is all to say that one cannot read the Closing Date definition in isolation and draw conclusions about its materiality.

The Court holds that Plaintiff's right under the PSA to close by conventional financing terminated after November 30, 2020. That is, to enforce its right to purchase the Property through

conventional financing, the transaction must have closed by November 30, 2020. Beyond that date, Plaintiff was only entitled to purchase the Property by assuming the existing loan or with Defendant's cooperation. Because Defendant maintained the sole discretion to terminate the PSA after the parties failed to close by the specified Closing Date, and did so, Plaintiff cannot now argue that it has the right to force the sale of the Property under the terms of the PSA.

Plaintiff's preferred reading would allow the Court to disregard Section 5.2 entirely—any attempt to terminate the PSA based on the expiration of the Closing Date would be swiftly defeated by the absence of a "time is of the essence" provision. Preventing a non-defaulting party from terminating the agreement after the expiration of the Closing Date would render Section 5.2 meaningless. The Court will not endorse an interpretation of the contract that fails to give effect to an otherwise valid provision. Thus, the Court concludes that these provisions in the PSA demonstrate that the Closing Date was intended to be a material term.

Plaintiff does not argue that the Court should disregard the termination notice because Defendant was in default at the time it purported to cancel the PSA. *See* ECF No. 41. Instead, it argues that Defendant had, in alleging that Raven failed to use commercially reasonable efforts to seek Prudential's approval for the Loan Assumption, "manufactured" an event of default that would allow for the termination of the Agreement. *Id.* at 2. But the Court need not address this alleged breach—or Defendant's motives for alleging it—to determine Plaintiff's likelihood of success on the merits. It is clear from the parties' filings that as of November 30, 2020, Plaintiff still intended to purchase the Property through the Loan Assumption and thus had neither sought nor secured the necessary outside funding that would have rendered it ready, willing, and able to close on the Closing Date for conventional financing.

Plaintiff's failure to secure conventional funding by November 30, 2020 proves fatal to its petition for preliminary injunction. Although the Court makes no final ruling on the merits of Plaintiff's breach of contract claim, it appears to the Court that Plaintiff seeks to enforce a right—to purchase the Property with conventional financing after November 30, 2020—that simply does not exist under the terms of the PSA. Thus, the Court concludes that Plaintiff has failed to demonstrate a substantial likelihood of success on the merits, and the Court is obligated to deny its petition.

## **CONCLUSION**

For the foregoing reasons, Plaintiff's petition for preliminary injunction is **DENIED**.

It is so **ORDERED**.

**SIGNED** this 1st day of March, 2021.

Xavier Rodriguez
United States District Judge